UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA TARESLI ORTEGA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No. 2:24-cv-01021-CSK<br><br>ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 9, 11) |

　　　　Plaintiff Maria Taresli Ortega seeks judicial review of a final decision by Defendant Commissioner of Social Security denying an application for disability insurance benefits.[1] In the summary judgment motion, Plaintiff contends the final decision of the Commissioner contains legal error and is not supported by substantial evidence. Plaintiff seeks a remand for further proceedings. The Commissioner opposes Plaintiff's motion, filed a cross-motion for summary judgment, and seeks affirmance.

　　　　For the reasons below, Plaintiff's motion is DENIED, the Commissioner's cross-motion is GRANTED, and the final decision of the Commissioner is AFFIRMED.

I.　　**SOCIAL SECURITY CASES: FRAMEWORK & FIVE-STEP ANALYSIS**

　　　　The Social Security Act provides benefits for qualifying individuals unable to

---

[1] This action was referred to the magistrate judge under Local Rule 302(c)(15) and proceeds on the consent of all parties. (ECF Nos. 4, 6, 7.)

1

"engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(a). When an individual (the "claimant") seeks Social Security disability benefits, the process for administratively reviewing the request can consist of several stages, including: (1) an initial determination by the Social Security Administration; (2) reconsideration; (3) a hearing before an Administrative Law Judge ("ALJ"); and (4) review of the ALJ's determination by the Social Security Appeals Council. 20 C.F.R. § 404.900(a).

At the hearing stage, the ALJ is to hear testimony from the claimant and other witnesses, accept into evidence relevant documents, and issue a written decision based on a preponderance of the evidence in the record. 20 C.F.R. § 404.929. In evaluating a claimant's eligibility, the ALJ is to apply the following five-step analysis:

> **Step One**: Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to step two.
>
> **Step Two**: Does the claimant have a "severe" impairment? If no, the claimant is not disabled. If yes, proceed to step three.
>
> **Step Three**: Does the claimant's combination of impairments meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings")? If yes, the claimant is disabled. If no, proceed to step four.
>
> **Step Four**: Is the claimant capable of performing past relevant work? If yes, the claimant is not disabled. If no, proceed to step five.
>
> **Step Five**: Does the claimant have the residual functional capacity to perform any other work? If yes, the claimant is not disabled. If no, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); 20 C.F.R. § 404.1520(a)(4). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). If the ALJ finds a claimant not disabled, and the Social Security Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner. *Brewes v. Comm'r.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) (noting the Appeals Council's denial of review is a non-final agency action). At that point, the claimant may seek judicial review of the Commissioner's final decision by a federal district court. 42 U.S.C. § 405(g).

The district court may enter a judgment affirming, modifying, or reversing the final

decision of the Commissioner. *Id.* ("Sentence Four" of § 405(g)). In seeking judicial review, the plaintiff is responsible for raising points of error, and the Ninth Circuit has repeatedly admonished that the court cannot manufacture arguments for the plaintiff. *See Mata v. Colvin*, 2014 WL 5472784, at *4 (E.D. Cal, Oct. 28, 2014) (citing *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (stating that the court should "review only issues which are argued specifically and distinctly," and noting a party who fails to raise and explain a claim of error waives it).

A district court may reverse the Commissioner's denial of benefits only if the ALJ's decision contains legal error or is unsupported by substantial evidence. *Ford*, 950 F.3d. at 1154. Substantial evidence is "more than a mere scintilla" but "less than a preponderance," i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). The court reviews evidence in the record that both supports and detracts from the ALJ's conclusion, but may not affirm on a ground upon which the ALJ did not rely. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). The ALJ is responsible for resolving issues of credibility, conflicts in testimony, and ambiguities in the record. *Ford*, 950 F.3d at 1154. The ALJ's decision must be upheld where the evidence is susceptible to more than one rational interpretation, or where any error is harmless. *Id.*

## II. FACTUAL BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS

On September 4, 2020, Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, alleging she has been disabled since July 17, 2015. Administrative Transcript ("AT") 31, 73, 239-40 (available at ECF No. 8). Plaintiff claimed disability due to her back, left knee, and diabetes. AT 73. Plaintiff's applications were denied initially and upon reconsideration; she sought review before an ALJ. AT 87, 89, 103, 108, 127. Plaintiff appeared with a representative at an August 13, 2021 hearing before an ALJ. AT 45-71. On November 1, 2021, the ALJ issued a decision finding Plaintiff not disabled. AT 31-39. The Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner. AT 1-9. Plaintiff

filed a complaint in the Eastern District of California, and on February 16, 2023, the district court granted the parties' stipulated motion to remand for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). AT 3942-46, 3948-52. The Appeals Council remanded the case to another ALJ, in part, for further evaluation of the medical source opinions and prior administrative medical findings. AT 3953-61. Upon remand, the ALJ held another administrative hearing on October 19, 2023. AT 3899-12. Plaintiff appeared with counsel at the hearing, where Plaintiff testified about her impairments and a vocational expert testified about hypothetical available jobs in the national economy. *Id.*

On January 30, 2024, the ALJ issued a decision finding Plaintiff was not disabled. AT 3875-91. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 17, 2015. AT 3878. At step two, the ALJ determined Plaintiff had the following severe impairments: left knee derangement with post-meniscectomy syndrome of the knee, and degenerative disc disease of the thoracic and lumber spine. *Id.* At step three, the ALJ found Plaintiff's combination of impairments did not meet or medically equal any Listing. AT 3879 (citing 20 C.F.R Part 404, Subpart P, Appendix 1). Relevant here, the ALJ considered Listings 1.15 (disorder(s) of the skeletal spine);1.16 (lumbar spinal stenosis); and 1.18 (abnormality of a major joint(s) in any extremity). AT 3879-80. The ALJ found no evidence that Plaintiff required use of an assistive device. *Id.*

The ALJ then found Plaintiff had the residual functional capacity to perform the full range of sedentary work (20 C.F.R. §§ 404.1567(a)). AT 3880. Plaintiff "could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She could not climb ladders and scaffolds. She could not work around unprotected heights. She needed to avoid concentrated exposure to moving mechanical parts." AT 3880. In crafting this residual functional capacity, the ALJ stated she considered Plaintiff's symptom testimony, objective medical evidence, other evidence, medical opinions, and prior administrative medical findings. AT 3880.

Based on the residual functional capacity, the ALJ determined at step four that

Plaintiff was incapable of performing past relevant work. AT 3888. However, at step five, the ALJ found Plaintiff capable of performing other jobs in the national economy, including: (i) document preparer, sedentary exertion, SVP 2, with 16,000 jobs nationally; (ii) escort vehicle driver, sedentary exertion, SVP 2, with 37,000 jobs nationally; and (iii) ticket counter, sedentary, SVP 2, with 6,500 jobs nationally.[2] AT 3890. Thus, the ALJ found Plaintiff not disabled during the relevant period. *Id.*

Plaintiff filed this action requesting judicial review of the Commissioner's final decision, and the parties filed cross-motions for summary judgment. (ECF Nos. 1, 9, 11.)

### III.  ISSUES PRESENTED FOR REVIEW

Plaintiff contends the ALJ erred: by (A) finding Plaintiff's symptom testimony inconsistent with other evidence in the record, resulting in an incorrect residual functional capacity; (B) failing to consider Dr. Peter Mandell's opinion that Plaintiff had a reduced capacity for sitting when determining the residual functional capacity; and (C) not following the Appeals Council's order. Plaintiff seeks remand for further proceedings. (ECF Nos. 9, 12.)

The Commissioner argues the ALJ: (A) properly discounted Plaintiff's subjective allegations, resulting in a residual functional capacity supported by substantial evidence; (B) reasonably did not include sitting limitations from Dr. Mandell's medical opinion in the residual functional capacity after finding the opinion unpersuasive; and (C) properly followed the Appeals Council's order. (ECF No. 11.) Thus, the Commissioner contends the decision as a whole is supported by substantial evidence and should be affirmed. (*Id.*)

/ / /

/ / /

---

[2] "Sedentary" in the ALJ's step-five determination references sedentary work, as defined by 20 C.F.R. §§ 404.1567(a).
  "SVP" is "specific vocational preparation," defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *See* DOT, App. C, § II, available at 1991 WL 688702.

## IV. DISCUSSION

### A. Residual Functional Capacity Formation

Plaintiff's first two arguments involve the ALJ's alleged error in determining that Plaintiff had a residual functional capacity to perform sedentary work.

A claimant's residual functional capacity assessment is a determination of what the claimant can still do despite his or her physical, mental and other limitations. 20 C.F.R. § 404.1545(a). The residual functional capacity is the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). In determining a claimant's residual functional capacity, an ALJ must assess all the evidence (including the descriptions of limitation, and medical reports) to determine what capacity the claimant has for work despite the impairment(s). 20 C.F.R. § 404.1545(a); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (a residual functional capacity that "fails to take into account a claimant's limitations is defective"). Therefore, an ALJ errs when she provides an incomplete residual functional capacity ignoring "significant and probative evidence." *Hill v. Astrue*, 698 F.3d 1153, 1161-62 (9th Cir. 2012).

The residual functional capacity does not need to directly correspond to a specific medical opinion; rather, "the ALJ is responsible for translating and incorporating clinical findings into a succinct [residual functional capacity]." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). ALJs are capable of independently reviewing and forming conclusions about medical evidence to determine whether a claimant is disable and cannot work, as required by statute. *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022). The ALJ's residual functional capacity assessment should be affirmed if the ALJ has applied the proper legal standard and the decision is supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

/ / /

### 1. Subjective Symptom Testimony

First, Plaintiff argues that ALJ erred when determining the residual functional capacity by improperly finding that Plaintiff's symptom testimony was inconsistent with other evidence in the record. Pl. MSJ at 6 (ECF No. 9).

#### a. Legal Standards

A claimant's statements of subjective symptoms alone are insufficient grounds to establish disability. 20 C.F.R § 404.1529(a). If an ALJ was required to believe every allegation of pain or impairment, disability benefits would run afoul of the Social Security Act and its purpose. *Treichler v. Comm'r,* 775 F.3d 1090, 1106 (9th Cir. 2014). In evaluating the extent to which an ALJ must credit the claimant's report of their symptoms, the Ninth Circuit has stated:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (quotations omitted). The ALJ's reasons for discounting or rejecting a claimant's subjective symptom testimony must be sufficiently specific to allow a reviewing court to conclude the adjudicator did not arbitrarily discredit a claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quotations omitted). Examples of "specific, clear and convincing reasons" for discounting or rejecting a claimant's subjective symptom testimony include: prescription of conservative treatment, *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); inconsistencies between the plaintiff's testimony and conduct (including daily

activities), *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005); whether the alleged symptoms are consistent with the medical evidence of record, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); an unexplained or inadequately explained failure to follow a prescribed course of treatment, *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991); or prior inconsistent statements by the plaintiff, *Fair v. Bowen*, 885 F.2d 597, 604 n.5 (9th Cir. 1989). A lack of corroborating, objective medical evidence alone is insufficient grounds for an ALJ to discount subjective symptoms; however, it is a factor the ALJ may consider. *Rollins*, 261 F.3d at 857 (citing 20 C.F.R § 404.1529(c)(2)).

### b.     Symptom Testimony

Regarding Plaintiff's statements that she had disabling physical pain such that she could not work, the ALJ began by summarizing Plaintiff's statements at the 2021 hearing. *See* AT 45-71. At the 2021 hearing, Plaintiff stated that she has numbness and weakness in her left knee, and that she wears a knee brace. AT 57. Plaintiff stated that she has constant pain in her lower back, and that sometimes she has to lie down because she cannot sit or stand up. AT 58. Plaintiff said she experienced tingling in her legs and feet, and that her leg is weak and she has fallen several times. *Id.* Plaintiff stated that it is hard for her to walk and that she tries to walk for at least ten minutes but has to stop and start again. *Id.* Plaintiff stated she cannot take the stairs and can lift at most ten pounds. AT 59. Plaintiff also stated that she avoids driving because of her back pain, and that she has difficulty sitting due to pain in her knee. AT 59-60. The ALJ concluded the symptoms Plaintiff alleged could be caused by her physical impairments, but "the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." AT 3881.

First, the ALJ properly noted the conflicts between Plaintiff's testimony and the objective medical evidence. AT 3881-85. Regarding Plaintiff's back pain, the ALJ noted that Plaintiff was diagnosed with degenerative disc disease of the lumbar spine with radicular pain, primarily in her lower extremity. AT 3881. The ALJ noted that in July 2015

and November 2016, examinations of Plaintiff's spine were normal. *Id.*; AT 704, 2486-87. In April 2018, upon examination, Plaintiff had limited lumber range of motion and initially had positive straight leg raises but negative straight leg raises on distraction. AT 1405-08, 3881. Otherwise, Plaintiff walked with a normal gait, including normal toe and heel walking. AT 1430, 3881. The ALJ noted in August 2018, Plaintiff had tenderness to palpation in the right lower back and paraspinal area, she walked with a normal gait and had no difficulty heel walking and walking. AT 1955-58, 3881. In October 2018, Plaintiff stood in good posture, but had some reduced lumbar range of motion. AT 2966, 3881. Plaintiff's straight leg raises were intermittently positive, and she had diminished sensation in a stocking-type pattern in the left lower extremity. AT 2966, 3882. Plaintiff walked with a limp but did not use a cane. AT 2967, 3881. In November 2019 and January 2020, Plaintiff had limited range of motion in her lumber spine and her straight leg raise was positive.[3] AT 1978-81, 3882.

      Regarding Plaintiff's knee pain in the objective medical evidence, the ALJ noted that Plaintiff suffered a work-related injury to her left knee in February 2015. AT 1337, 2255-57, 3882. On August 27, 2015, Plaintiff had left knee arthroplasty with subtotal lateral meniscectomy and chondroplasty of the patella. AT 2667-68, 2869-70, 3882. In April 2016, a clinical examination of Plaintiff's knee revealed mild joint effusion, tenderness to palpation along the lateral joint line, full extension, and loss of flexion. AT 2106-13, 3883. The ALJ noted that Plaintiff was a candidate for meniscal transplant surgery. *Id.* In July 2016 and September 2016, an x-ray of Plaintiff's left knee revealed preserved joint spaces with no effusion and was consistent with lateral post meniscectomy symptoms. AT 1349, 1427, 3883. Clinical examinations through July 2017 documented that Plaintiff had tenderness along the medial joint and minimally reduced range of motion in her left knee, she walked with an antalgic gait on the left. AT 1444-46,

---

[3] The ALJ acknowledged that Plaintiff's spinal impairments worsened in severity, but these worsening symptoms occurred after Plaintiff's date last insured of December 31, 2020 for Title II benefits. AT 3882.

1451-53, 1467-69, 2773, 3883. An August 2017 x-ray revealed preserved joint spaces with no effusion and intact patellofemoral compartments. AT 1351, 3883. The ALJ found this inconsistent with disabling left knee symptoms. Plaintiff also reported to a medical provider that Plaintiff walked for one hour after meals. AT 1554, 3883. The ALJ noted that a repeat MRI from October 2017 showed a small oblique tear at the posterior horn of the medial meniscus, and the lateral and medical compartment cartilage was preserved. AT 1424-25, 3883. Plaintiff had tenderness over the medial lateral joint lines of the left knee. AT 1463-65, 3883. In November and December 2017, the ALJ noted that Plaintiff's physical examination was largely unchanged, but she was noted as walking with a normal gait in November 2017. AT 1369-71, 1470-72, 1825, 3883. In January and February 2018, the ALJ noted Plaintiff walked with an antalgic gait on the left, she had knee tenderness along the joint lines and full, but painful, range of motion. AT 1416-21, 3884. Plaintiff also reported walking from one to two hours most days at the park. AT 1416, 3884. From March 2018 to December 2018, treatment notes indicate that Plaintiff's left knee was normal except for positive lateral joint line tenderness, mild/slight joint effusion, and abnormal extension and flexion. AT 1401-15, 1435-36, 1447-50, 2029-48, 3884. Sometimes she would walk with an antalgic gait, and other times she walked with a normal and unassisted gait pattern. *Id.* In March 2019, Plaintiff was able to perform a partial double leg squat and had full range of motion in her left knee. AT 2020, 3884. Also in March 2019, Plaintiff described her left knee symptoms as intermittent, stable, and mild. AT 2050-56, 3884. Examinations from 2020 show Plaintiff sometimes walked with an antalgic but unassisted gait, and sometimes walked with a normal gait. AT 2525-41, 3238, 3885. The ALJ noted multiple times throughout the opinion that Plaintiff's pain symptoms were responsive to medication (Norco). AT 3882, 3883, 3884, 3885.

The ALJ found these findings from the objective medical evidence inconsistent with Plaintiff's hearing statements that she cannot sit, stand, or walk for even brief periods. AT 3881. The ALJ also found the clinical signs supportive of a finding that

Plaintiff can occasionally stoop, kneel, crouch, crawl and climb ramps and stairs, but that she cannot climb ladders and scaffolds. AT 3884. This evidence of normal or mild impairments contradicts Plaintiff's statements at the 2021 hearing that she cannot walk for more than ten minutes and that she has constant back pain so she cannot sit or stand up and has to lie down. AT 58. Plaintiff's reports to her medical providers of walking from one to two hours a day also contradict her statements at the 2021 hearing. AT 1416,1554. The ALJ found that there was no evidence of significant weakness or joint instability affecting her left knee which was inconsistent with her allegations of frequent falls. AT 3881.

The ALJ properly considered the objective medical evidence in resolving conflicts in Plaintiff's testimony, and did not err in finding Plaintiff's own stated extreme limitations contradicted by the medical findings in the record. *See Rollins*, 261 F.3d at 857; *see also Marshall v. Saul*, 830 F. App'x 179, 181 (9th Cir. 2020) (finding clear and convincing reasons to reject the plaintiff's symptom testimony where there was a "disjunction between his statements that [he] could not walk and medical evidence showing that his gait was normal"). When the objective medical evidence in the record is inconsistent with the plaintiff's subjective testimony, the ALJ may weight it as undercutting the testimony. *See Smartt v. Kijakazi*, 53 F.4th 489, 498-99 (9th Cir. 2022).

Plaintiff contends the ALJ improperly cherry-picked portions of three medical opinions to support finding Plaintiff's testimony inconsistent with the record. *See* Pl. MSJ at 6. The ALJ states multiple times that Plaintiff's symptoms are managed with "sparing use of Norco" as stated in the opinion by Katie Knott, PA. AT 3882, 3884, 3885. Plaintiff argues that the ALJ uses this opinion to discount evidence of Plaintiff's pain and restriction in the left knee, but that the actual opinion shows that Knott was concerned with Plaintiff's opioid consumption and effectively ignores the other findings in the report. Pl. MSJ at 6. An ALJ may not "cherry-pick" evidence in discounting a medical opinion. *Castaneda v.* Kijakazi, 2023 WL 6215792, at *5 (E.D. Cal. Sept. 25, 2023); *see Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) ("Yet we 'must consider the entire record

as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence.'" (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). A reading of Knott's opinion shows that she notes Plaintiff "has failed conservative care including long periods of rest, braces, medication trials, physical therapy, and injections." AT 2017. Despite Plaintiff's argument to the contrary, Knott was not very concerned with Plaintiff's opioid consumption. Knott states that with medication, Plaintiff's pain is manageable. *Id.* She also states that Plaintiff "meets the four A's of opioid use" including "analgesic benefit, improved activity level and function, no aberrant behaviors, and no side effects." *Id.* This opinion aligns with the ALJ's determination that Plaintiff's pain is managed with sparing use of Norco.

Plaintiff also contends that the ALJ improperly isolated the statement that Plaintiff reports walking from one to two hours on most days at the park. Pl. MSJ at 7. In a February 12, 2018 report by Dr. Matthew Wedemeyer, he reported that Plaintiff has constant left knee pain, and despite her pain she tries to remain active by walking anywhere from one to two hours on most days at a park if she can. AT 1416. The medical record also includes Plaintiff's report from June 2017 that she walked one hour at a time after meals. AT 1554-55, 3883. Plaintiff's reports in the medical record that she walks one to two hours a day at the park is in contradiction to Plaintiff's testimony that she can only walk for ten minutes at a time.

Plaintiff contends that the ALJ ignored the portion of an opinion by Dr. Eddie Lo that "the patient is really in trouble with this knee." AT 2112. As discussed below, the ALJ considered Dr. Lo's opinion and found it unpersuasive and inconsistent with the record. Therefore, the ALJ properly did not consider this portion of the opinion. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

The ALJ considered the whole of the record in crafting Plaintiff's physical limitations in the residual functional capacity. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014).

Second, in addition to relying on the medical evidence, the ALJ found Plaintiff responded positively to treatment. AT 3881-85. Impairments that respond well to prescribed treatment can undermine a claim of disability. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The Court finds the ALJ sufficiently cited evidence in the decision to support this conclusion. For example, the ALJ noted that in May 2018, Plaintiff's back pain had resolved with use of a Medrol Dosepak. AT 1403, 3881. The ALJ also noted that treatment notes from January 2019 stated that Plaintiff's statements were responsive to "sparing use of Norco." AT 2-17, 3884. In November 2020, Plaintiff was referred for eight sessions of physical therapy for her knee and lower back, which she said were "very helpful." AT 2234, 3882. It was reasonable for the ALJ to conclude that Plaintiff's response to treatment was inconsistent with her allegations of disabling symptoms. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008).

Third, the ALJ also cited Plaintiff's activities of daily living as a reason for discounting the more severe aspects of her testimony. AT 3882-84. The ALJ noted multiple times when Plaintiff reported being able to perform tasks that contradicted her testimony that she cannot sit, stand, or walk for more than ten minutes at a time. AT 58-60. The ALJ noted that Plaintiff was able to take care of her daughter (AT 1981), walk for one to two hours in the park (AT 1416), and walk one hour at a time after meals (AT 1555). AT 3882, 3883, 3884. Contradictions between Plaintiff's symptom testimony and her actual activities of daily living is a permissible reason to discount Plaintiff's severely limiting symptom statements. *See Burch*, 400 F.3d at 680-81 (finding symptom statements contradicted by the plaintiff's ability to care for her personal needs, cook, clean and shop, interact with family and boyfriend, and noting that though these daily activities "may also admit of an interpretation more favorable to [the plaintiff], the ALJ's interpretation was rational" and must be upheld where susceptible to more than one rational interpretation). Plaintiff did not explicitly challenge the ALJ's findings on this point in her opening brief, and therefore the argument is waived. *See Mata*, 2014 WL

5472784, at *4.

Finally, the ALJ did not wholly discount Plaintiff's symptom statements. The ALJ did not deem Plaintiff able to perform any job in the national economy. Instead, the ALJ found that Plaintiff was limited to sedentary work. AT 3880. Under the regulations, Plaintiff's statements of subjective symptoms alone are insufficient grounds to establish disability. 20 C.F.R § 404.1529(a). The Court finds the ALJ provided sufficiently specific reasons for discounting the more severe aspects of Plaintiff's symptom testimony regarding her physical impairments, such that the Court does not find Plaintiff's testimony was arbitrarily discredited. *See Brown-Hunter*, 806 F.3d at 493.

### 2. Medical Opinion Evidence

Second, Plaintiff argues that the ALJ failed to consider Plaintiff's reduced capacity for sitting when finding Plaintiff could perform sedentary work. Pl. MSJ at 8. Specifically, Plaintiff argues that the ALJ's opinion is not supported by substantial evidence because Dr. Mandell opined that Plaintiff could only sit for 30 to 40 minutes at a time. *Id.* at 9. Defendant argues that the ALJ properly did not incorporate Dr. Mandell's opinion into the residual functional capacity because the ALJ found it unpersuasive.[4] Def. MSJ at 12.

#### a. Legal Standards

For applications filed on or after March 27, 2017, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings, including those from [a plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ is to evaluate medical opinions and prior administrative medical findings by considering their "persuasiveness." *Id.*

In determining how "persuasive" the opinions of medical sources and prior administrative medical findings are, an ALJ must consider the following factors:

---

[4] Defendant also argues that Plaintiff did not challenge the ALJ's evaluation of Dr. Mandell's opinion, and has waived the issue. Def. MSJ at 12. The Court rejects this argument as overly technical where Plaintiff challenges the ALJ's residual functional capacity because it failed to consider Plaintiff's capacity for sitting based on Dr. Mandell's opinion. *See* Pl. MSJ at 8-9.

14

"supportability, consistency, treatment relationship, specialization, and 'other factors.'" 20 C.F.R. §§ 404.1520c(b) and (c)(1)-(5). Despite a requirement to consider all factors, the ALJ only need articulate a rationale on how the supportability and consistency factors were considered, as they are "the most important factors." *Id.* § 404.1520c(b)(2). A medical opinion is supported if the medical source explains the relevant objective medical evidence. *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022). A medical opinion's consistency concerns its alignment with other medical and nonmedical sources in the record. *Id.* at 792. The regulations grant the ALJ flexibility to weigh the supportability and consistency factors based on all evidence in the record. 20 C.F.R. §§ 404.1520c(c)(1)-(2). The ALJ is not required to articulate findings on the remaining factors (relationship with plaintiff, specialization, and other) unless "two or more medical opinions or prior administrative medical findings about the same issue" are "not exactly the same," and both are "equally well-supported [and] consistent with the record." *Id.* at sub. (b)(2)-(3). An ALJ may address multiple opinions from a single medical source in one analysis. 20 C.F.R. §§ 404.920c(b)(1) ("source-level articulation"). Generally speaking, the ALJ does not need to discuss every piece of evidence when interpreting the evidence and developing the record. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

      b. <u>Analysis</u>

  Both Plaintiff and Defendant only address the opinion of Dr. Mandell when discussing Plaintiff's sitting limitations. The ALJ addresses Dr. Mandell's opinion three separate times. AT 3881-82, 3884, 3887-88. First, the ALJ addresses Dr. Mandell's opinion when discussing the objective evidence concerning Plaintiff's back. AT 3881-82. The ALJ notes that Dr. Mandell's opinion states that Plaintiff cannot sit for more than 30 to 40 minutes without getting up and stretching, she cannot be on her feet for more than about ten minutes before she needs to sit down, and she cannot lift more than about ten pounds. AT 2970. Plaintiff alleged difficulty stooping, squatting, kneeling and stair climbing. AT 2964. Dr. Mandell noted that Plaintiff stood in a good posture but had

reduced lumbar range of motion. AT 2965-66. The ALJ found these findings consistent with a limitation to occasional stooping, kneeling, crouching, crawling and climbing ramps and stairs, but inconsistent with disabling lumber symptoms as there was no evidence of paravertebral muscle spasm or local tenderness over the spine, paraspinal muscles and sacroiliac notches. AT 3882. The ALJ noted that Plaintiff walked with a limp but did not use an assistive device, which the ALJ found consistent with sedentary exertion. AT 3882.

The ALJ addressed Dr. Mandell's opinion a second time when discussing Plaintiff's knee injury.[5] AT 3884. The ALJ again noted that Plaintiff walked with a moderate limp, but did not use an assistive device. AT 2967. The ALJ also noted that examination of Plaintiff's left knee revealed tenderness, mild valgus of both knees, negative McMurray's test, and reduced range of motion. *Id.* The ALJ noted that Dr. Mandell found Plaintiff's condition permanent and stationary. AT 3884. The ALJ found these findings consistent with sedentary exertion. *Id.* The ALJ again discussed Dr. Mandell's opinion when analyzing the prior administrative findings. AT 2886-87. Here the ALJ reiterates Dr. Mandell's opinion about being unable to sit for more than 30 to 40 minutes and also notes that Plaintiff should use a cane even though she does not. AT 2970, 3887-88.

The ALJ found Dr. Mandell's opinion inconsistent and unpersuasive. AT 3888. The ALJ noted that to support his opinion, Dr. Mandell relied on his clinical examination of Plaintiff, Plaintiff's self-reports and a partial review of the medical record. AT 3888. The ALJ found Dr. Mandell's opinion inconsistent with Plaintiff's self-reports, including those that she regularly stood and walked for one to two hours at a time. AT 3888. The ALJ acknowledged evidence that Plaintiff walked with an antalgic gain on the left side, her gait was consistently unassisted and she had a positive response to "sparing use" of Norco. AT 3888. The ALJ properly analyzed Dr. Mandell's opinion and found it

---

[5] The ALJ states that Dr. Mandell evaluated Plaintiff a second time in October 2018, but there no indication of this in Dr. Mandell's report. *See* AT 2963.

16

unpersuasive. *See Woods*, 32 F.4th 791-92. Once the ALJ found the opinion unpersuasive, he was not required to incorporate the opinion into the residual functional capacity determination. *See Batson*, 359 F.3d at 1197. The ALJ therefore properly excluded Dr. Mandell's sitting limitation from the residual functional capacity.

Contrary to Plaintiff's contention, the ALJ did not "pick out a few isolated instances of improvement" and make them a basis for the conclusion that Plaintiff can work. Pl. MSJ at 8. Not only did the ALJ consider Dr. Mandell's opinion, the ALJ also analyzed other medical opinions and prior administrative medical findings that discuss Plaintiff's sitting limitations when determining the residual functional capacity, including G. Leu, MD, a state agency medical consultant who found that Plaintiff could sit for about six hours in an eight-hour workday with normal breaks (AT 83-84); and H. Samplay, M.D., a state agency medical consultant who found that Plaintiff could sit about six hours in an eight-hour workday with normal breaks (AT 101-02). The ALJ found these portions of Dr. Leu and Dr. Samplay's opinions persuasive. Therefore, the ALJ properly considered Plaintiff's sitting limitations by considering all significant and probative evidence when determining the residual functional capacity. *See Hill*, 698 F.3d at 1161-62.

In sum, the ALJ properly considered the totality of the evidence and there was substantial evidence to support the ALJ's residual functional capacity of sedentary work.

### B. Appeals Council Order

Finally, Plaintiff argues that the ALJ did not follow the Appeals Council's order on remand. Pl. MSJ at 9. Specifically, Plaintiff argues that the Appeals Council directed the ALJ to consider how Plaintiff's difficulties sitting could cause her to be "off task" at work. *Id.* Defendants argue that the ALJ properly followed the Appeals Council's order and that Plaintiff's argument misstates the instructions. Def. MSJ at 13.

The ALJ must take any action ordered by the Appeals Council and may take additional action not inconsistent with the remand order. 20 C.F.R. § 404.977(b). On February 16, 2023, the district court reversed the Commissioner's first decision and remanded the case for further proceedings. AT 3948-49. The district court also ordered

that, as agreed upon by the parties, the Commissioner will "further develop the record as necessary, and issue a new decision" upon remand. AT 3949. The Appeals Council order stated that the initial hearing decision "d[id] not contain an adequate evaluation of the medical source opinions and prior administrative medical findings." AT 3957. The Appeals Council stated that "[f]urther evaluation of the medical source opinions and prior administrative medical findings is therefore warranted" and specifically addressed the opinion of Dr. Mandell. *Id.*

Based on the instructions by the district court in 2023 and the Appeals Council order, the ALJ properly followed the Appeals Council's instructions. As discussed above, the ALJ analyzed the medical source opinions, and properly analyzed Dr. Mandell's opinion and found it unpersuasive. Therefore, the ALJ was not required to consider Dr. Mandell's opinion when determining Plaintiff's residual functional capacity. *See Batson*, 359 F.3d at 1197. Accordingly, Dr. Mandell's opinion about time "off task" was properly not included in the residual functional capacity, and the ALJ properly followed the Appeals Council's order.

## V.     CONCLUSION

Having addressed all of the points of error raised by Plaintiff, the Court finds the ALJ's decision otherwise supported by substantial evidence in the record and free from legal error. *See Ford*, 950 F.3d at 1148 (noting that a district court may reverse only if the ALJ's decision "contains legal error or is not supported by substantial evidence").

**ORDER**

Accordingly, the Court ORDERS:

1. Plaintiff's motion for summary judgment (ECF No. 9) is DENIED;
2. The Commissioner's cross-motion (ECF No. 11) is GRANTED;
3. The final decision of the Commissioner is AFFIRMED; and

/ / /

/ / /

/ / /

4. The Clerk of the Court is directed to CLOSE this case.

Dated: March 28, 2025

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

5, tare.1021.24